UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-60497
_____


IN THE MATTER OF: WENDELL GLENN BLOUNT,

Debtor.

_____


QUEEN CITY HOME HEALTH CARE COMPANY; AMERICAN MOBILITY, INC.,

Appellants,

versus

FREELAND & FREELAND,

Appellee-Cross-Appellant,

verses

SAUL J. FESSMAN; PAUL BOUSQUET,

Appellants-Cross-Appellees

_____

Appeal from the United States District Court
for the Northern District of Mississippi
(3:95-CV-131-B)
_____
August 25, 1997


Before REYNALDO G. GARZA, HIGGINBOTHAM, and JONES, Circuit
Judges.

EDITH H. JONES, Circuit Judge:[*]

A law firm sued its former clients and the client's former adversaries in litigation to recover attorneys' fees. The district court applied a charging lien under Mississippi law to the adversaries. Finding no legal support for this decision we reverse on this issue. We also remand to the district court concerning whether a valid assignment enforceable against Queen City had been made between Blount and the Freelands.

## FACTUAL BACKGROUND

This appeal concerns two separate but related lawsuits brought by Freeland & Freeland[2] (the "Freelands") in the bankruptcy court. In the first suit (the "first suit"), the Freelands sued their former client Wendell Blount seeking to have a debt of $120,000 for legal fees declared nondischargeable in Blount's bankruptcy proceeding. At trial, Blount appeared but chose not to put on any evidence in his behalf. The Freelands' evidence established that the firm represented Blount and a corporation he controlled, Mississippi Durable Medical Equipment ("MDME"),[3] in

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[2]This law firm was formerly known as Freeland, Freeland & Wilson.

[3]At the beginning of the Queen City litigation, Blount also owned another party to the litigation, Medical Concepts. However, during the course of the Queen City litigation, Blount sold Medical Concepts to another entity.

2

various legal matters, including litigation against the Queen City Home Health Care Corp. and American Mobility, Inc. (hereinafter collectively referred to as "Queen City"). In the Queen City litigation, the Freelands had been negotiating a settlement on behalf of Blount. However, because Blount owed the Freelands past due legal fees stemming from the Queen City litigation and other matters, the Freelands informed Blount that they would cease representing him -- including their current representation in the Queen City litigation -- if Blount did not pay or make appropriate arrangements for the fees. According to the Freelands, Blount orally promised that $120,000 of any settlement agreement in the Queen City litigation would go to the Freelands in satisfaction of his debt to them.

Shortly thereafter, the Freelands claimed that they settled the Queen City litigation for, *inter alia,* $120,000. Blount rejected the settlement offer and discharged the Freelands. Blount resumed settlement talks with Queen City *pro se.* The Freelands filed a notice of assignment and motion to intervene in the Queen City litigation. After being notified of the Freelands' intervention, the parties to the Queen City litigation reached a settlement similar -- but not identical -- to the settlement that the Freelands had negotiated for Blount, in which Blount was to be paid, *inter alia,* $120,000. Blount collected the settlement money

3

from the Queen City litigation, refused to pay the Freelands, and sought bankruptcy protection.

The Freelands' position was that Blount had defrauded them by planning to discharge the Freelands after they had negotiated a settlement and cutting them out of the proceeds. After considering the evidence presented by the Freelands, the bankruptcy court held that the debt for $120,000 was nondischargeable.

The Freelands filed a second suit (the "Queen City suit") in the bankruptcy court,[4] this time against Queen City, AMI, Saul Fesman[5] (president of Queen City), and Paul Bousquet (Queen City's counsel throughout the Queen City litigation). The Freelands sought to hold these defendants liable for the $120,000 settlement payment on the theory that they were aware of and disregarded the $120,000 agreement between the Freelands and Blount.

Because Blount had not offered any evidence at the first suit, the bankruptcy court ruled in the Queen City suit that it would not be bound by the facts developed in the first suit "insofar as they might affect the relative legal positions of the parties hereto."

_____

[4]The bankruptcy court heard this dispute by agreement of the parties.

[5]Although spelled "Fesman," the appellant's name apparently was misspelled when this appeal was filed in this court; this error is reflected in the caption to this case. However, throughout this opinion, we will use the apparent correct spelling of the appellant's name.

In the Queen City suit -- and in opposition to its ruling in the first suit -- the court rejected the Freelands' assignment claim. However, even in so doing, the court did determine that the Freelands possessed a charging lien against Blount for past due attorneys' fees. Determining that the amount of the lien was limited by the value of the legal services provided to Blount in the Queen City litigation, the court ruled in favor of the Freelands for $29,090.25. The court further ruled that by paying the settlement proceeds to Blount, Queen City had interfered with the Freelands' charging lien rights. Having so ruled, the court held that Queen City was indebted to the Freelands for the amount of the lien. The court did not address the Freelands' additional theory of tortious interference with contractual relations and found no liability against Fesman and Bousquet, but refused to order sanctions against the Freelands for improperly joining Fesman and Bousquet.

The Queen City defendants appealed the bankruptcy court's decision to the district court, complaining of the bankruptcy court's finding of liability against Queen City, its award of the Freelands' past due attorneys' fees, and its refusal to sanction the Freelands for improper joinder of Fesman and Bousquet. The Freelands appealed the amount for which Queen City was found liable, the bankruptcy court's refusal to address its tortious interference claim, and its refusal to hold Fesman and Bousquet liable. The district court affirmed, adopting the reasoning of the

5

bankruptcy court.  The parties appeal, asserting the same grounds of error as they did below.

## DISCUSSION

We review a district court's findings of fact for clear error and its conclusions of law *de novo*.  *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In Re Briscoe Enters., Ltd., II),* 994 F.2d 1160, 1163 (5th Cir.) (relying on *Matter of Bennett,* 970 F.2d 138, 139 (5th Cir. 1992)), *cert. denied,* 510 U.S. 992 (1993).  "Where the district court has affirmed the bankruptcy court's factual findings, we will reverse [factual determinations] only if left with a firm conviction that an error has been committed."  *Placid Ref. Co. v. Terrebonne Fuel and Lube, Inc. (In Re Terrebonne Fuel and Lube),* 108 F.3d 609, 613 (5th Cir. 1997).

### A.   CHARGING LIEN

The primary issue in this appeal is whether the district court correctly concluded pursuant to Mississippi law that the Freelands possessed a charging lien against Blount for services rendered.

An attorney's special or charging lien is a creation of state common law.  *See Webster v. Sweat,* 65 F.2d 109, 109-10 (5th Cir. 1933) ("Federal courts, although they recognize no common-law lien in favor of attorneys, give effect to the laws of the states in which they are held.").  In states that recognize a special or

6

charging lien, such a lien permits an attorney to recover his fee from the proceeds of the judgment in a case. *See id.* at 110. "The rule of [Mississippi] has always been that an attorney has a lien on the funds of his client for the services rendered in the proceeding by which the money was collected." *Halsell v. Turner,* 34 Miss. 432, 36 So. 531, 531 (1904). Such a lien may attach only after a judgment is handed down, and it "only applies to funds already in the attorney's possession."[6] *Tyson v. Moore,* 613 So.2d 817, 826 (Miss. 1992); *see Halsell,* 36 So. at 531 ("His claim is limited to the contract price agreed upon, or the reasonable value of services rendered, in the special case."). A special or charging lien is available without regard to whether the attorney is employed for an hourly fee or on a contingent basis: "The rule is the same whether there exists an express contract between attorney and client for a stated fee, or whether there is only an implied contract to pay the reasonable value of services rendered." *Halsell,* 36 So. at 531.

In this case, the district court erred as a matter of law in concluding that the Freelands had a charging lien against Blount. To be eligible for a charging lien, the Freelands would have had to have reached a settlement in the Queen City litigation

---

[6]The requirement that the fees be in the attorney's possession is inconsistent with the Freelands' assertion that they could pursue property in the hands of Queen City after they were discharged.

before they were discharged by Blount. According to the factual findings made by the bankruptcy court, they did not do so; that court found that "no binding settlement agreement had been reached before the [Freelands] were terminated," Order at 13, and that the Freelands "had obviously been discharged by Blount prior to the finalization of the settlement agreement." Order at 14. This is a factual finding that, based on a review of the record, is not clearly erroneous, and accordingly, we are not at liberty to disturb. Because there was no settlement prior to the Freelands' discharge, the Mississippi requirement that there be a judgment or decree has not been met.

Second, the attorneys did not have actual or constructive possession of the funds as also required by Mississippi law. Clearly, the Freelands could not have had possession -- either actual or constructive -- of the "settlement" funds when no settlement had occurred. The bankruptcy court correctly found as much: "the plaintiffs never had actual possession of the settlement proceeds." Order at 16.

The lower courts thus erred as a matter law in concluding that the Freelands possessed a charging lien against Blount.[7]

---

[7]The Freelands also appeal to this court complaining that the lower court erred in not finding Fesman and Bousquet liable on the charging lien claim. Because we conclude that there is no charging lien under Mississippi law, there can be no liability against Fesman or Bousquet on this claim.

8

## B.  ASSIGNMENT FROM BLOUNT TO THE FREELAND FIRM

The Freelands appeal the lower court's finding that Blount did not make a valid assignment to the Freelands for $120,000.  The crux of their argument is that the bankruptcy court erred because in the first suit, the court had concluded that Blount had made a valid and enforceable assignment.  The Freelands first contend that because of this finding in the first suit, the court was not at liberty to revisit the issue.

It is well settled that "[i]t is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 327 n.7, 99 S.Ct. 645, 649 n.7 (1979) (relying on *Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 329 (1971)).  Queen City was neither a party nor a privy in the first suit between the Freelands and Blount.  It is also significant that although Blount appeared in the first suit, he chose not to put on any evidence, and the court necessarily took all of the Freelands' contentions presented as true.  It cannot be said that Queen City's interest concerning whether there was a valid assignment was fully or fairly litigated at that time.

Because Queen City was neither a party nor a privy to the first suit, Queen City was not afforded a full and fair opportunity to contest the assignment, an issue for which the Freelands sought

9

to hold them liable in the second suit.  The lower court acted properly in "not consider[ing] itself bound by any of the findings or determinations of the [first suit] insofar as they might affect the relative legal positions of the parties hereto."  Order at 2-3.

In the Queen City suit, the lower court found that the assignment failed for either of two reasons: (1) the alleged assignment was not irrevocable and/or (2) any attempted assignment failed for lack of consideration.  Just how the court arrived at its first finding is not apparent from the record, and Queen City does not attempt to defend it.  Over strenuous objection by the Freelands, however, Queen City supports the district court's finding that the assignment of a portion of the settlement was contingent on the law firm's continuing to represent Blount, and when Blount discharged the firm for good reason, there was no longer consideration.  The Freelands counter that Queen City, as debtor for the judgment, lacked standing to attack the assignment for lack of consideration.

It is not fully clear, as Queen City argues, that under Mississippi law a debtor such as Queen City has standing to raise the issue that an assignment fails for lack of consideration. *Great S. Nat'l Bank v. McCullough Envtl. Servs., Inc.,* 595 So.2d 1282, 1288 (Miss. 1992). While Great Southern states. ". . . an account-debtor has available to him or her various defenses against an assignee," id., it deals only with the issue of fraud underlying

10

the assignment.  According to <u>Great Southern</u>, Queen City does have available to it defenses against the Freelands including at least fraud in the creation of the assignment and failure to provide adequate notice to the debtor of the assignment.[8]  *See id.* We are uncertain of the extent of defenses afforded by Mississippi law, and neither the parties nor the courts have furnished reliable assistance.

Queen City also argues that it was not afforded adequate notice of the assignment.  Generally, a debtor who has not received notice of an assignment or who has not been put on sufficient inquiry of such an assignment may deal with the subject of the assignment as if no assignment had in fact been made.  *See* 6A C.J.S. *Assignments* § 98 (1975); 6 AM.JUR.2D *Assignments* § 96 (1963).

After reviewing Mississippi law, we are not persuaded that the district court properly based its decision on whether, as to Queen City, the alleged assignment between Blount and the

---

[8]Concerning the fraud issue, it is interesting to note that Rule 1.8 of the Mississippi Rules of Professional Conduct provides:

> A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
> (1)  acquire a lien granted by law to secure the lawyer's fee or expenses; and
> (2)  contract with a client for a reasonable contingent fee in a civil case.

*See Tyson,* 613 So.2d at 826.

11

Freelands failed for a lack of consideration. This is not to say that the assignment is enforceable; the parties' briefing simply does not plumb the issues surrounding the Freelands' assignment sufficiently to assist us to rule on any alternative basis. Accordingly, we must reverse and remand to the district court for further consideration of the enforceability against Queen City of the assignment.[9]

## C. SANCTIONS

Fesman and Bousquet both complain of the lower court's decision not to sanction the Freelands for naming them as defendants. They claim that because the lower court had found that there was virtually no evidence to support the Freelands' claims against them, the court abused its discretion in declining to sanction them for their joinder.

We review a lower court's decision whether to impose sanctions for an abuse of discretion. *See Terrebonne Fuel and Lube, Inc.,* 108 F.3d at 613 (citing *Shipes v. Trinity Indus.,* 987

---

[9] Because the issue whether an assignment enforceable as to Queen City has been made must be reconsidered by the lower court, we do not reach whether, as the Freelands claim, Queen City tortiously interfered with this alleged assignment. *Cf. Merchants & Planters Bank of Richmond v. Williamson,* 691 So.2d 398, 407 (Miss. 1997) (Under Mississippi law, to prevail on a claim for intentional interference with contractual relations, the plaintiff must demonstrate that an "enforceable obligation existed between the plaintiff and another party."). The lower courts may have to deal with this claim again.

F.2d 311, 323 (5th Cir. 1993)).  Here, we find none, but we also find no ground for personal liability of these individuals.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed and remanded in part.